# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

WILLARD E. MORRISON,

               Petitioner,         :     Case No. 1:15-cv-99

    - vs -                       District Judge Timothy S. Black
                                   Magistrate Judge Michael R. Merz

SHERI DUFFEY, Warden,
 Southeastern Correctional Institution,

                              :

               Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for review after transfer of the reference (ECF No. 12).  The case is pending on Respondent's Motion to Dismiss for Lack of Jurisdiction (ECF No. 8) which Petitioner opposes (ECF No. 10) and in support of which Respondent has filed a Reply (ECF No. 11).

Morrison pleads one ground for relief:  "Ineffective assistance of counsel results in prejudice when counsel misadvises a defendant of non-collateral consequences of entering a plea. *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), and *Missouri v. Frye*, 132 S. Ct. 1399 (2012); U.S. Const. amend. VI, XIV."  (Petition, ECF No. 1, PageID 18.)

**Procedural History**

On his plea of no contest, Petitioner Willard Morrison was convicted and sentenced on

1

two counts of attempted murder, one with a firearm specification, in the Adams County Common Pleas Court.  The trial court judgment was affirmed on appeal.  *State v. Morrison*, 2008-Ohio-4913, 2008 Ohio App. LEXIS 4112 (4th Dist. Sept. 15, 2008), appellate jurisdiction declined, 120 Ohio St. 3d 1507 (2009).

Morrison then filed a petition for writ of habeas corpus in this Court in Case No. 1:09-cv-760, raising as Ground Four the claim of "Ineffective assistance of counsel [in that trial counsel] failed to provide competent legal assistance by not pursuing whether there was an actual misunderstanding of what a plea to [sic] no contest meant."  That claim was dismissed with prejudice, *Morrison v. Warden,* 2011 U.S. Dist. LEXIS 78915 (S.D. Ohio July 20, 2011)(Beckwith, D.J.)  Judge Beckwith denied a certificate of appealability. *Id.*  at * 16-17, as did the Sixth Circuit.  *Morrison v. Knab*, No. 11-3900 (6th Cir. Apr. 17, 2012)(unreported, copy at ECF No. 7, PageID 263-67).  Having attempted in vain in the state courts to withdraw his no contest plea, Morrison filed the instant Petition February 9, 2015 (ECF No. 1).

**Positions of the Parties**

Respondent seeks dismissal of the Petition as second-or-successive.  Anticipating that defense, Morrison argued in his Petition that not all second-in-time habeas applications are second-or-successive, even if they attack the same judgment of conviction (ECF No. 1, PageID 20-21).  Whether his petition is second-or-successive must be judged, he claims, under the abuse of the writ standard which substantially predates the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), a standard Morrison claims he

meets. *Id.* at PageID 21-23.

In the Motion to Dismiss, Respondent asserts that "[a] petition is successive when it raises claims challenging a petitioner's conviction or sentence that were or could have been raised in earlier petition. Morrison's petition is clearly successive and this Court lacks jurisdiction to consider his claims." (Motion, ECF No. 8, PageID 349.)  Respondent does not address the applicability of the abuse of the writ doctrine.  Instead, the Warden asserts Morrison's current claim was "readily discoverable at the time of his state court direct appeal." *Id*. Moreover, in his prior habeas case, "Morrison actually raised claims which encompassed the same subject matter and similar allegations." *Id.*  Finally, his claim is not based on a "new federal or state right recognized by the United States Supreme Court." *Id.* at PageID 350.

Morrison responds that his "current claim was not, and could not have been, raised in his initial habeas petition, nor has it ever been litigated before this Court." (Response, ECF No. 10, PageID 354.)  To show the claim could not have been litigated in the prior case because it would have been procedurally defaulted, Morrison relies on *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012).  He asserts the Supreme Court and the Sixth Circuit have found "pragmatic reasons" sufficient to allow a numerically second petition "without subjecting the claims to the more stringent requirements of § 2244(b)." *Id.* at PageID 356.  To bring himself within the *Martinez* exception to procedural default, he claims he was "previously impeded by the lack of effective post-conviction counsel from having his current claim considered on the merits by this Court." *Id.* at PageID 357.

Morrison admits his "situation would be different if he had previously raised this claim in his initial habeas petition." *Id.* at PageID 358.  He says his claim is different "in both form as

well as substance" from the claim he made in his earlier case in that "he is claiming ineffective assistance of counsel at the plea bargain stage and has submitted three affidavits in support of his claim," . . . affidavits concerning off-the-record matters. *Id.* at PageID 358-59.

Finally, Respondent replies that the Warden is not seeking transfer of this case to the Sixth Circuit for a decision of whether or not it may proceed, but rather that it should be dismissed for lack of jurisdiction (Reply, ECF No. 11, PageID 362-63). The Warden distinguishes *Martinez, supra*, and *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013), because Morrison actually raised an ineffective assistance of trial counsel claim on direct appeal. *Id.* at PageID 363-64.

# ANALYSIS

28 U.S.C. § 2244(b) provides in pertinent part

(b)

(1)   A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2)   A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

(A)   the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)

(i)  the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii)  the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(3)

(A)  Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

This language, added by the AEDPA, appears on its face to divide habeas corpus claims in second-in-time cases into two classes:  (1) claims that were presented in a prior application and (2) claims that are "new," i.e. not presented in a prior application.  As to the first class, the statute commands that they be dismissed.  As to the second class – "new" claims – the statute commands that they be dismissed unless the petitioner has permission to proceed from the court of appeals.

The Supreme Court has given us a gloss on § 2244(b).  Second-in-time habeas petitions that raise claims that were raised by the same prisoner with respect to the same conviction are not second-or-successive if the prior petition was dismissed without prejudice for lack of exhaustion of state court remedies.  *Slack v. McDaniel,* 529 U.S. 473 (2000); *Stewart v. Martinez-Villareal,* 523 U.S. 637 (1998).  A habeas petition raising a claim after a conditional writ and new sentencing hearing which could have been raised on the original petition is not barred as a second or successive petition because it challenges a new judgment. *Magwood v.*

*Patterson*, 561 U.S. 320 (2010).

In *In re Bowen*, 436 F.3d 699 (2006)(Cole, J.), the Sixth Circuit, following *Slack*, found a second petition was not successive when it raised ineffective assistance of trial counsel and ineffective assistance of appellate counsel claims which were not exhausted at the time of the first petition and before *Rhines v. Weber* allowed a stay and abeyance.

> The Supreme Court has made clear that not every numerically second petition is "second or successive" for purposes of AEDPA. *Slack v. McDaniel*, 529 U.S. 473, 487, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (a petition filed after a mixed petition has been dismissed before the district court has adjudicated any claim is not a second or successive petition); *Martinez-Villareal v. Stewart*, 523 U.S. 637, 118 S. Ct. 1618, 140 L. Ed. 2d 849 (1998) (a numerically second petition alleging a claim that was contained in a first petition, but dismissed as unripe, is not second or successive); see also *Carlson v. Pitcher*, 137 F.3d 416, 419 (6th Cir. 1998) (same). Although § 2244(b) specifies the treatment of second or successive petitions, courts defining "second or successive" generally apply abuse of the writ decisions, including those decisions that predated AEDPA. *Martinez-Villereal*, 529 U.S. at 643-45 (considering "abuse of the writ" cases in determining whether petitioner's Ford claim is second or successive); see also *Singleton v. Norris*, 319 F.3d 1018, 1023 (8th Cir. 2003); *Esposito v. United States*, 135 F.3d 111, 113 (2d Cir. 1997) (per curiam); *Pratt v. United States,* 129 F.3d 54, 60 (1st Cir. 1997), cert. denied, 523 U.S. 1123, 140 L. Ed. 2d 945, 118 S. Ct. 1807 (1998); *Reeves v. Little*, 120 F.3d 1136, 1138 (10th Cir. 1997) (per curiam). In *Sanders v. United States,* 373 U.S. 1, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1948), the Supreme Court explained abuse of the writ:
>
> > If a prisoner deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application, in the hope of being granted two hearings rather than one or for some other such reason, he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground. … Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless, piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay.

6

> *Id*. at 18. Under the abuse of the writ doctrine, a numerically second petition is "second" when it raises a claim that could have been raised in the first petition but was not so raised, either due to deliberate abandonment or inexcusable neglect. *McCleskey v. Zant*, 499 U.S. 467, 489, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

*Id.* at 704.

In *In re Curtis Jones*, 652 F.3d 603 (6th Cir. 2010), the court again explained:

> [N]ot every numerically second habeas petition is subject to these gatekeeping procedures. Instead, in a series of post-AEDPA cases, the Supreme Court has confirmed that a numerically second petition is not properly termed "second or successive" to the extent it asserts claims whose predicates arose after the filing of the original petition. The statutory phrase "second or successive petition," the Court has emphasized, is a "term of art given substance" in the Court's prior habeas cases. *Slack v. McDaniel*, 529 U.S. 473, 486, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). So in *Stewart v. Martinez-Villareal*, 523 U.S. 637, 118 S. Ct. 1618, 140 L. Ed. 2d 849, the Court held that a capital prisoner's claim that he was incompetent to be executed under *Ford v. Wainwright*, 477 U.S. 399, 106 S. Ct. 2595, 91 L. Ed. 2d 335 (1986), was not barred even though a prior petition raising the same claim had been dismissed because the claim was unripe. *See* 523 U.S. at 644-45. And in *Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007), the Court removed any implication that *Martinez-Villareal* applied only to a claim raised in a prisoner's initial petition. There, the prisoner's numerically second petition asserted a *Ford* claim that had been omitted from his initial petition. The Court held that the claim was not successive, rejecting "[a]n empty formality requiring prisoners to file unripe *Ford* claims" in an initial habeas petition in order to be able to pursue them in a subsequent petition. *Id.* at 946. In doing so, the Court relied on pragmatic concerns, observing that "[i]nstructing prisoners to file premature claims, particularly when many of these claims will not be colorable even at a later date, does not conserve judicial resources" or vindicate any other policy of federal habeas law. *Id.*

*Id.* at 605.

It is the district court which must decide in the first instance whether a petition is second-or-successive. *In re Sheppard*, 2012 U.S. App. LEXIS 13709 (6th Cir. May 25, 2012); *In re*

7

*Kenneth W. Smith*, 690 F.3d 809 (6th Cir. 2012).  If the district court reaches that conclusion, at least as to new claims, the proper remedy is not dismissal, but transfer to the court of appeals for that court to decide whether permission should be granted.  *In re Sims*, 111 F.3d 45 (6th Cir. 1997).

In this case Morrison attacks the same criminal judgment that he attacked in the prior case, so *Magwood v. Patterson, supra,* does not prevent dismissal.

The relevant claim Morrison made in the prior case, his Fourth Ground for Relief, was that he received ineffective assistance of trial counsel in that his trial attorney did not ensure that his plea was knowing, intelligent, and voluntary in that he did not make certain that Morrison knew what a no contest plea means.  His sole Ground for Relief in this case is that he received ineffective assistance of trial counsel when his trial attorney misadvised him of non-collateral consequences of entering a plea.

In both cases Morrison has claimed he received ineffective assistance of trial counsel.  In the prior case he alleged that this ineffectiveness occurred at the plea bargaining stage and consisted in not explaining what a plea of no contest is (Report and Recommendations, ECF No. 7, PageID 209-210; Order, ECF No. 7, PageID 239-44).  In rejecting this claim, Judge Beckwith applied the familiar *Strickland v. Washington* test that a petitioner must show deficient performance and prejudice. She concluded "whatever his lawyer may or may not have done or failed to do, the plea colloquy demonstrates that Morrison sufficiently understood the charges to which he pled no contest."

In the current case, Morrison claims his attorney did not properly advise him of the consequences of entering a no contest plea, to wit, of the maximum possible penalties for the offenses with which he was charged (Petition, ECF No. 1, PageID 19).  The claim is based on the

8

2012 Affidavits of Morrison and his trial attorney, Eric Wrage. Wrage swears he thought Morrison had a winning appeal issue with his amnesia about the events of the crime (ECF No. 7, Exh. 19, PageID 280, ¶¶ 1-2). He does not say he failed to advise Morrison of the maximum penalties, but instead

> There were no promises made, but based on my experience as a litigator as well as my knowledge of the case, I really thought the Judge was going to sentence Morrison to 10 years or something similar. I've never seen such a harsh sentence for something that wasn't a homicide. I know Willard believed the same, as we had discussed the possible sentences, and I advised Willard of my ultimate opinion.

*Id.* at ¶ 3.

Morrison's Affidavit avers:

> 2. Right before we started sitting [sic] the jury, my attorney asked for a recess and pulled both my daughters, me, and I think my mom out of the courtroom and into a conference room. My attorney said that he worked out a plea deal. He then said that I would receive a maximum sentence of 17 years, but that I would be up for parole in 10. He said that we only had a few minutes to think about this because he didn't want to piss the Judge off. He told me to take the deal. Because he went to law school and has a law degree, I trusted him. I felt very rushed to make a decision, but I was scared, so I went along with it.
>
> 3. I truly believed that if I changed my plea to no contest, that I would have a really good chance to get out in 10 years, as long as I had a good record in prison.
>
> 4. I had no idea that I could receive a sentence more than 17 years. I never would have changed my plea to no contest had I actually understood that I could be sentenced to more than that. Even after the Judge explained things in Court, because my attorney told me that a deal was worked out, I believed my attorney and agreed to plead no contest.

*Id.* at PageID 281, ¶¶ 2-4.

The Court concludes the claims of ineffective assistance of trial counsel in the two cases

are different. In the prior case, Morrison claimed he did not understand the **charges** because of what his attorney told him or failed to tell him. In this case he claims he did not know the **possible maximum penalties** because his lawyer failed to tell him. There are of course a myriad ways for counsel to fail in his or her duties. Not every claim of ineffective assistance of trial counsel is the same for § 2244(b) purposes. If the doctrine of res judicata applied in habeas, the closeness of these two claims might be determinative, but res judicata does not apply here. *Smith v. Yeager*, 393 U.S. 122 (1968). Since the claims of ineffective assistance of trial counsel in the two cases are different – that is, different failures of counsel to perform effectively -- this second case is not subject to dismissal under 28 U.S.C. § 2244(b)(1).

Although the case is not dismissable under § 2244(b)(1), it still cannot proceed in this Court if it is second-or-successive without circuit court permission. The second issue to be decided is whether this case can escape classification as second-or-successive by virtue of the case law interpreting that classification. The Magistrate Judge concludes that it cannot.

First of all, the claim made here was never before made and dismissed for lack of exhaustion, as contemplated by *Slack v. McDaniel, supra.*

Secondly, it is not a claim which has arisen since the first case was adjudicated. That is, the question of whether Morrison's no contest plea was induced by constitutionally deficient advice was ripe at the time of direct appeal. Of course, it is based on evidence outside the direct appeal record. Under Ohio practice such a claim is supposed to be presented in a petition for post-conviction relief under Ohio Revised Code § 2953.21, supported by the extra-record evidence.

Morrison never filed a petition for post-conviction relief. Instead, having obtained the affidavits on which he relies from his trial lawyer and his daughter, he filed a Motion to

Withdraw Plea of No Contest September 17, 2012 (State Court Record, ECF No. 7, Exh. 19, PageID 268, et seq.). In denying the motion on the merits, the trial judge weighed the fact that Morrison had waited almost five years to file it. *Id.* at Exh. 20, PageID 310. By the time Morrison filed this motion to withdraw, his time to file a petition for post-conviction relief had long since expired.[1]

Morrison attempts to bring himself within the "newly arisen" exception to second-or-successive status by claiming both new facts and new law.

As to new facts, the Petition argues that "[w]ithin mere months of [the decisions in *Lafler* and *Frye*] Morrison's new counsel had found and requested an affidavit from Morrison's trial counsel, Eric Wrage. That affidavit was notarized May 26, 2012." This argument confuses new facts with new evidence of those facts. Morrison, his daughter, and Wrage knew the morning of trial (October 1, 2007) what Wrage had or had not told Morrison. The Petition claims "[b]efore Morrison secured new (undersigned) counsel, trial counsel's affidavit was previously unobtainable. Trial counsel had not come forward. . ." (ECF No. 1, PageID 17). But there is no evidence Mr. Wrage was resistant or in hiding or had left the state. Morrison and his daughters affidavits would have been sufficient to raise the ineffective assistance of trial counsel claim in a post-conviction proceeding and Wrage's testimony could have been obtained by subpoena.

This situation is entirely different from habeas cases where the claim for relief arises after a first petition is decided. The leading example in the Supreme Court is a *Ford v. Wainright* claim of incompetence to be executed which may arise, given the average length of time between a death sentence and its execution, long after a first petition is adjudicated. See *Panetti* and *Martinez-Villareal, supra*. Here the ineffective assistance of trial counsel claim arose on the first

---

[1] At that time Ohio Revised Code § 2953.21 provided a post-conviction petition had to be filed not later than 180 days after the appellate transcript was complete. Since the Fourth District decided this case September 15, 2008, the statute of limitations on a post-conviction petition had plainly run by September 2012.

morning of trial and Morrison simply failed to assemble the evidence until many years later.

Morrison also argues his claims are newly-arisen because *Lafler* and *Frye* were not decided until 2012. The Petition suggests those two decisions are what persuaded the Ohio Public Defender to become involved in the case (See ECF No. 1, PageID 17). But *Lafler* and *Frye* did not recognize a new constitutional right to be applied retroactively on collateral review. *In re Liddell*, 722 F.3d 737 (6th Cir. 2013).

Nor is this case saved from second-or-successive status by *Martinez v. Ryan, supra*, or *Trevino v. Thaler, supra.* In *Martinez* the Supreme Court held:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington,* 466 U. S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. Cf. *Miller-El v. Cockrell*, 537 U. S. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (describing standards for certificates of appealability to issue).

132 S. Ct. at 1318-1319. In *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013), the Court extended *Martinez* to the Texas system. The Sixth Circuit has not yet decided whether *Trevino* applies to Ohio post-conviction collateral attacks. *McGuire v. Warden*, 738 F.3d 741, 751-52 (6th Cir. 2013).[2] Assuming it does apply to Ohio, it is not clear that it would assist Morrison. Ohio law provides for the appointment of counsel in 2953.21

---

[2] This Court has previously concluded the *Martinez-Trevino* exception reaches Ohio cases. *Landrum v. Anderson*, 2012 U.S. Dist. Lexis 118501 (S.D. Ohio Aug. 22, 2012), *adopted by Landrum v. Anderson*, 2012 U.S. Dist. LEXIS 171777 (S.D. Ohio Dec. 4, 2012). However, that conclusion remains pending on appeal to the Sixth Circuit.

proceedings where a hearing is required. *State v. Welch,* 28 Ohio St. 2d 31 (1971). But Morrison never filed a post-conviction petition, much less requested counsel be appointed in that proceeding. Hence Morrison cannot raise a *Martinez-Trevino* claim that his post-conviction counsel was ineffective in failing to raise his now-presented ineffective assistance of trial counsel claim.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Warden's Motion to Dismiss be DENIED. It is further recommended[3] the Court conclude this case involves a second-or-successive habeas application within the meaning of 28 U.S.C. § 2244(b)(2) and TRANSFER the case to the Sixth Circuit for a determination of whether the case can proceed in this Court.

January 25, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen

---

[3] Where second-or-successive transferability is presented alone, the Magistrate Judge has found the issue is not dispositive within the meaning of Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b) and is therefore subject to decision and order by a Magistrate Judge. Where that issue is entwined with a clearly dispositive motion, as it is here, the prudent course is to leave the transferability issue to the District Judge in the first instance.

days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).